IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

      **Plaintiff,**

           **v.**

MARTIN THUNA,

      **Defendant.**

**Criminal No.** 18-487 (FAB)

### OPINION AND ORDER

Eli Lilly and Company ("Lilly"), which is not a party here, requests that the Court enter an Order of Restitution directing defendant Martin Thuna ("Thuna") to pay Lilly $2,099,018.01 pursuant to 18 U.S.C. sections 3663(a)(2) ("Victim and Witness Protection Act," or "VWPA"), 3664, and 3771(e)(2)(A) ("Crime Victims' Rights Act," or "CVRA"). (Docket No. 23.) The United States and Thuna oppose Lilly's motion. (Docket Nos. 33 & 41.) For the reasons set forth below, the Court **DENIES** Lilly's motion for restitution. (Docket No. 23.)

### I.   Background

On August 8, 2018, Thuna pled guilty to a one-count information charging Introduction into Interstate Commerce of Misbranded Drugs with Intent to Defraud, in violation of 21 U.S.C. sections 331(a), 333(a)(2), and 352(a), with forfeiture provisions. (Docket Nos. 3 & 4.) According to the plea agreement:

> During the period of January 2007 to May 2011, Martin Thuna caused [Droguería de la Villa, Inc. ("DDLV")] to introduce and deliver for introduction into interstate commerce misbranded drugs, that is, wholesale shipments of prescriptions [sic] drugs with false labeling (pedigrees and transaction histories) in order to mislead and defraud the [Federal Food and Drug Administration ("FDA")] of its lawful regulation of the legitimate drug supply chain. The prescription drugs distributed by DDLV in the manner stated above were in turn sold at retail level and paid in part by health care benefit programs. The parties have stipulated that for Sentencing Guideline purposes, the offense conduct caused a loss of more than $1,500,000.

(Docket No. 4 at p. 13.)  The plea agreement stipulates that "the Court may impose restitution."  Id. at p. 2.  The plea agreement also states that "the parties [] agree that restitution is not proper in this case, since there are no readily identifiable consumers and health care benefit programs related to this offense."  Id. at p. 2.

On December 11, 2018, Lilly requested that the Court recognize Lilly as a victim of Thuna's criminal conduct pursuant to the VWPA and the CVRA and award Lilly restitution.  (Docket No. 23 at p. 1.)  Lilly argues that Thuna "proximately harmed Lilly when he caused misbranded Lilly pharmaceuticals to be introduced into interstate commerce with the intent to defraud."  Id. at p. 2.  Lilly asserts that Thuna's conduct "undermined the image and brand name of Lilly, the trust doctors and patients place in those brands, and the legitimate efforts of Lilly to recoup its investment in life saving new drugs."  Id. at p. 3.  Lilly maintains

that Thuna's conduct also "harmed Lilly by displacing sales of its legitimate products" and that Lilly's "lost wholesale sales total[] at least $2,099,018.01." Id.

## II.  Legal Standard

"Federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." United States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996) (citation omitted).  Congress enacted the VWPA to ensure "that Federal crime victims receive the fullest possible restitution from criminal wrongdoers." Hughey v. United States, 495 U.S. 411, 420 (1990) (internal citation and quotation marks omitted).  Congress later enacted the CVRA, which guarantees federal crime victims "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

Restitution rights pursuant to the VWPA and the CVRA "attach only if the claimant is a 'victim' under the VWPA, or a 'crime victim' under the CVRA." United States v. Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *3 (E.D. Va. Sept. 29, 2014) (citing 18 U.S.C. §§ 3663(a)(2), 3771(e)).  The definition of "victim" pursuant to the VWPA and the definition of "crime victim" pursuant to the CVRA are "nearly identical." Id. According to the VWPA, a "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be

ordered."  18 U.S.C. § 3663(a)(2).[1]  Similarly, the CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia."  18 U.S.C. § 3771(e)(2)(A).

Federal courts apply the same legal standard to the VWPA and the CVRA in determining a claimant's victim status.  See, e.g., In re McNulty, 597 F.3d 344, 350 n.6 (6th Cir. 2010) ("[W]e find our case law construing the VWPA . . . persuasive, both for how the CVRA is to be interpreted procedurally and for when an individual qualifies as a victim."); In re Rendon Galvis, 564 F.3d 170, 173-76 (2d Cir. 2009) (applying the same analysis to the VWPA and the CVRA in finding that the claimant was not a victim pursuant to the statutes); Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *3 (applying "the same analysis to the definitions of 'victim'" pursuant to the VWPA "and 'crime victim'" pursuant to the CVRA).

---

[1] The VWPA also states that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," a "victim" is "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663(a)(2).  The Court may consider conduct not alleged in the indictment if the convicted offense "involves as an element a scheme, conspiracy, or pattern of criminal activity." United States v. Matos, 611 F.3d 31, 43 (1st Cir. 2010).  If a defendant is convicted of an offense that does not involve an underlying "scheme, conspiracy, or pattern of criminal activity" as an element of the offense, "the Court cannot impose restitution for acts beyond the indictment's allegations."  United States v. Rivera-Ortiz, 323 F. Supp. 3d 287, 291 (D.P.R. 2018) (Gelpí, J.).  Moreover, "a continuing offense 'is not the same as a scheme or pattern of illegal conduct.'"  Id. at 292 (quoting United States v. Dunne, 324 F.3d 1158, 1164 (10th Cir. 2003)).  Because 21 U.S.C. sections 331(a), 333(a)(2), and 352(a) do not include a "scheme, conspiracy, or pattern of criminal activity" as an element, the Court need not consider imposing restitution for acts beyond Thuna's one-count information and plea agreement.  See id. at 291; Docket Nos. 2 & 4.

Pursuant to the direct and proximate harm requirements of the VWPA and the CVRA, "at least one of the elements of the offense must be a but-for cause of the 'crime victim's' harm, and the harm must be 'a reasonably foreseeable consequence of the criminal conduct.'" Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *3 (quoting In re Fisher, 640 F.3d 645, 648 (5th Cir. 2011)); see In re Rendon Galvis, 564 F.3d at 175 (citations omitted) ("The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses.").

Direct harm "requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked." In re McNulty, 597 F.3d at 352. "[T]he alleged victims must be victims of the offense of conviction," and "the purported victims' losses" must be "caused by the specific conduct that is the basis of the defendant's offense of conviction." United States v. Freeman, 741 F.3d 426, 435 (4th Cir. 2014) (internal citations and quotation marks omitted).

Proximate harm requires that "the injury suffered by the individual must have been a foreseeable consequence of the crime of conviction." Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *4 (citing In re McNulty, 597 F.3d at 352). "A person will not qualify as a 'crime victim' merely because he suffers harm at the

hands of the defendant, even if such harm qualifies as a separate crime." Id. (citing In re McNulty, 597 F.3d at 352).[2]

When a court finds that a victim is entitled to restitution, the "amount of restitution ordered must be based on actual loss, not intended or expected loss." United States v. Innarelli, 524 F.3d 286, 295 (1st Cir. 2008). "Actual loss is widely (and correctly) thought to be limited to pecuniary harm that would not have occurred but for the defendant's criminal activity." United States v. Alphas, 785 F.3d 775, 786 (1st Cir. 2015) (citations omitted). "This is necessarily a backward-looking inquiry that takes into account what actually happened, including whether the victim managed to recover some or all of the value it originally lost." Innarelli, 524 F.3d at 294 (citations omitted). The Court's calculation of restitution, however, "is not held to the standards of scientific precision." United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) (citation omitted). "As long as the court's order reasonably responds to some reliable evidence, no more is exigible." Id. (citiation omitted).

## III. Discussion

For Lilly to be awarded restitution, Lilly's alleged harm

---

[2] While a claimant seeking victim status "may believe that a defendant should have been charged with an additional or different crime, the CVRA clearly states that 'nothing in this [statute] shall be construed to impair the prosecutorial discretion' of the United States." Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *4 (alteration in original) (quoting 18. U.S.C. § 3771(d)(6)).

must be "caused by the specific conduct that is the basis of the defendant's offense of conviction."  See <u>Freeman</u>, 741 F.3d at 435 (internal citations and quotation marks omitted).  Thuna pled guilty to causing DDLV "to introduce and deliver for introduction into interstate commerce . . . wholesale shipments" of misbranded drugs "in order to mislead and defraud the FDA."  (Docket No. 4 at p. 13.)  Thuna's offense involves the following four elements: (1) that the item charged was a drug; (2) that the item was introduced or caused to be introduced into interstate commerce by the defendant; (3) that the item was misbranded at the time it was introduced into interstate commerce; and (4) that the defendant acted with the intent to defraud or mislead.  See 21 U.S.C. §§ 331(a), 333(a)(2), 352(a).

Because restitution is "limited to pecuniary harm that would not have occurred but for the defendant's criminal activity," the Court considers only Lilly's alleged economic harm of "lost wholesale sales totaling at least $2,099,018.01."  See <u>Alphas</u>, 785 F.3d at 786; Docket No. 21, Ex. 1 at p. 6; <u>see also</u> Docket No. 28 at pp. 3-34.[3]  In describing its alleged harm, Lilly explains that "[it] do[es] not sell [its] drugs at retail. Rather, [it] price[s] [its] products for sale to wholesalers using a wholesale

---

[3] Indeed, Lilly acknowledges that "it is impossible to place a value on the damage [Thuna's] conduct may have caused to Lilly's image and the brand names of its pharmaceutical products."  (Docket No. 23, Ex. 1 at p. 9.)

acquisition cost, and those wholesalers then sell to retail pharmacies." (Docket No. 23, Ex. 1 at p. 6.) According to Lilly, "a drug cannot be re-sold to another patient after being dispensed to a Medicaid patient[,] [n]or can expired drugs, drugs sold to closed-door pharmacies at steep discounts, or drugs stolen from a Lilly warehouse be diverted back into the market," and thus "each unit of Lilly product that Defendant illegally diverted into the legitimate supply chain displaced a corresponding wholesale sale of Lilly's legitimate product to which Lilly was entitled." Id. at pp. 6-7.

Lilly's alleged harm is not "directly" caused by any element of Thuna's offense. See 18 U.S.C. §§ 3663(a)(2), 3771(e)(2)(A); Credit Suisse AG, No. 14-188, 2014 WL 5026739, at *3.[4] That Thuna intentionally introduced misbranded drugs into interstate commerce does not necessitate the displacement of Lilly's products. See 21 U.S.C. §§ 331(a), 333(a)(2), 352(a); In re Rendon Galvis, 564 F.3d at 175 (alteration in original) (internal citation and quotation marks omitted) ("There are too many questions left unanswered concerning the link between the Defendant's federal offense and [the petitioner's harm]."). Although Lilly's alleged loss is

---

[4] In determining whether Lilly is a victim pursuant to the VWRA and the CVRA, the Court applies the same analysis to both statutes. See id.; In re McNulty, 597 F.3d at 350 n.6; In re Rendon Galvis, 564 F.3d at 173-76. The Court's discussion of causation is limited to the VWRA and the CVRA and shall not be construed to apply to causation in the civil context. See In re Doe, 264 Fed. Appx. 260, 264 n.6 (4th Cir. 2007).

related to Thuna's offense, "[r]estitution must be based on the offense of conviction, not relevant conduct." <u>United States v. Frith</u>, 461 F.3d 914, 916, 921 (7th Cir. 2006) (finding that "[a] victim of the malpractice of [Frith's broker-dealership]'s auditor is not a victim of Frith's crime [of operating his broker-dealership without enough money in its reserve accounts], at least not directly"); <u>see</u> <u>United States v. George</u>, 403 F.3d 470, 474 (7th Cir. 2005) (citation omitted) ("'Loss' means direct injury, not consequential damages.").

In <u>Freeman</u>, the Fourth Circuit Court of Appeals discussed several cases to illustrate the qualifications necessary to demonstrate direct harm pursuant to the VWPA. <u>Freeman</u>, 741 F.3d at 435-46. The Fourth Circuit Court of Appeals explained that in <u>United States v. Blake</u>, 81 F.3d 498 (4th Cir. 1996), the defendant Blake "pled guilty to using unauthorized access devices[,] i.e., stolen credit cards," and that the Fourth Circuit Court of Appeals "overturned the award of restitution" to the owners of the credit cards "that stemmed from 'expenses related to lost property and document replacement,' i.e., pocketbooks, wallets, and other items Blake took when he stole the cards." <u>Freeman</u>, 741 F.3d at 436 (quoting <u>Blake</u>, 81 F.3d at 502-03). The Fourth Circuit Court of Appeals elaborated that "the elements of the crime to which Blake pled guilty (using the stolen cards) did not 'include the theft of

the credit cards,' and thus, 'the loss to the robbery victims was not caused by Blake's offense of conviction.'" Id. (alteration in original) (quoting Blake, 81 F.3d at 506-07).

The Fourth Circuit Court of Appeals in Freeman also reviewed United States v. Davis, 714 F.3d 809 (4th Cir. 2013), which "held that a homeowner could not collect restitution under the VWPA where the defendant broke into a home and stole a firearm, but pled guilty only to possession of a stolen firearm." Freeman, 741 F.3d at 436 (citing Davis, 714 F.3d at 816). "The homeowner requested restitution . . . for his insurance deductible for the unrecovered stolen firearm . . . and for damage caused when Davis broke the window to enter the residence." Id. (citing Davis, 714 F.3d at 812). The Fourth Circuit Court of Appeals in Davis overturned the district court's restitution award. Id. In Freeman, the Fourth Circuit Court of Appeals explained:

> Like Blake's credit card theft, Davis's burglary and theft of the firearm represent "necessary step[s] in the accomplishment of his objective," here, possession of a stolen firearm. But like Blake, "the factual connection between" these "necessary step[s]" and Davis's offense of conviction "is legally irrelevant for the purpose of restitution."

Id. (alterations in original) (quoting Davis, 714 F.3d at 814).

Because Lilly's alleged harm is not "directly" caused by any element of Thuna's offense, Lilly is not a victim of Thuna's crime pursuant to the VWPA or the CVRA. See 18 U.S.C. §§ 3663(a)(2),

3771(e)(2)(A).  The sale of Lilly's misbranded drugs to buyers who would have otherwise allegedly bought the same products from Lilly is not an element of Thuna's offense, and Lilly's loss is too attenuated for restitution.  See United States v. Janosko, 642 F.3d 40, 42 (1st Cir. 2011) (internal citations omitted) (finding that expenses qualifying for restitution cannot be "too attenuated" in fact or time from the crime); see also Freeman, 741 F.3d at 428, 438 (holding that the "specific conduct" underlying the defendant's obstruction of federal bankruptcy proceedings "clearly did not cause the purported victim's losses" that resulted from loans that the defendant persuaded the alleged victims to "take out . . . for the benefit of his church"); In re Doe, 264 Fed. Appx. 260 (4th Cir. 2007) (finding that the "chain of causation" between the defendant's misbranding of OxyCotin and the consumer's addiction "is too attenuated to support application of [the VWPA]").  Accordingly, Lilly is not entitled to restitution pursuant to the VWPA or the CVRA.

**IV.   Conclusion**

For   the   reasons   set   forth   above,   Lilly's   motion   for restitution is **DENIED**.   (Docket No. 23.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 28, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE